LAKE CITY FLOURING-MILL COMPANY *vs.* F. N. McVEAN.

July 18, 1884.

| 32  301|
| 82  156|

**Principal and Agent—Purchase by Agent of Unsound Wheat—Liability.**—Plaintiff send money to defendant, a commission merchant, with which to buy wheat for it, writing to him, "We will want you to buy sound wheat; do not want damp or musty grain;" and he accepted the employment. *Held*, that this imposed on defendant only the duty and liability of an agent, and he is not liable, without proof of want of proper care or skill, for the fact that the wheat proved to have been damp when purchased.

Appeal by defendant from an order of the district court for Wabasha county, refusing a new trial, after trial by *Start.*, J, a jury being waived.

*F. M. Wilson*, for appellant.

*H. D. Stocker*, for respondent.

GILFILLAN, C. J.[1] Plaintiff was engaged in operating a flour-mill at Lake City. Defendant was a commission merchant and warehouseman, engaged in buying and selling grain at Maiden Rock, Wisconsin. In May and June, 1882, plaintiff delivered to defendant the sum of $1,500, in consideration of which, and of a commission of three cents a bushel for purchasing, defendant agreed to buy for plaintiff, with said money, good, sound wheat, none of it damp or musty, at the market price at Maiden Rock, and store the wheat in his warehouse, and there deliver it to plaintiff on boat or barge. Of the wheat purchased by defendant with said money, $606.15 in aggregate price, though when he purchased it he believed it to be good, sound, and not damp, was not good, sound wheat, but was damp, and by reason thereof became musty and wholly unfit for milling purposes. Plaintiff refused to receive this part of the wheat from defendant, but demanded of him in lieu thereof wheat of the kind and character described in the agreement. With this demand he refused to comply, offering to deliver that purchased by him as aforesaid. These are the

[1] Dickinson, J., because of illness, took no part in this decision.

facts found by the court below. What degree of care and skill defendant bestowed in purchasing the wheat is not stated. The action is to recover the $606.15.

The evidence fairly justified the finding of facts, with some qualification as to the agreement. The evidence on that point consisted of a letter from defendant to plaintiff, under date of May 1, 1882, as follows: "Yours of 28th inst. received. If you wish me to buy wheat for your account, I will purchase the same way as others have paid me: 3 per cent. per bushel commission, free on board boat or barge here, and all wheat purchased for your account, after reported, at your risk in case of fire. If you wish me to purchase on above terms, send me by steamer Pepin to-day $300 in currency, and any instructions in regard to price, etc.; also the way you wish wheat graded." And the plaintiff's letter to him in answer, under date of May 2d, as follows: "Your favor of the 1st read, and contents noted. We send you to-day, by Capt. Murray, three hundred dollars. We will want you to buy sound wheat; do not want any damp or musty grain; wheat that will test 54 we can use if it is dry and sound, but it is worth less, of course, than heavy wheat. You will have to be governed, to some extent, in prices by what others are paying there, but we do not want to bull up the market. There is no profit in shipping flour at present prices of wheat, and you must get it as cheap as possible."

The contract was one of employment. It created the relation of principal and agent. In the absence of express agreement, or a usage of the business modifying them, the law attaches to the relation certain rights, duties, and liabilities. On the part of the agent he is to obey the instructions of his principal, and to exercise in his employment reasonable skill and ordinary diligence; that is, the degree of skill ordinarily possessed and employed by persons of common capacity engaged in the same business, and the diligence which persons of common prudence are accustomed to use about their own business and affairs. Story on Agency, § 183. For a loss to his principal from neglect of these duties he is liable. But he is not an insurer of success in the business. He does not, by merely accepting the employment, guaranty his principal against such incidental

losses as may occur in the course of the employment, "because," says Mr. Justice Cooley, in *Page* v. *Wells*, 37 Mich, 415, 421, "these are incident to all avocations, and no one, by any implication of law, ever undertakes to protect another against them." If the principal desires to hold his agent liable for such losses, he must make his contract of employment accordingly. We do not think the contract in this case established by the letters sufficient to change the liability of the agent.

Order reversed, and new trial ordered.