*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-1318**

Leslie Davis, petitioner,
Appellant,

vs.

Macy's Retail Holdings, Inc.,
Respondent

**Filed January 30, 2017
Affirmed
Worke, Judge**

Hennepin County District Court
File No. 27-CV-15-21907

Leslie Davis, Minneapolis, Minnesota (pro se appellant)

Brian A. Wood, William L. Davidson, Grant D. Goerke, Lind, Jensen, Sullivan & Peterson,
P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Bratvold, Presiding Judge; Worke, Judge; and Stauber,
Judge.

# UNPUBLISHED OPINION

**WORKE**, Judge

Appellant challenges the enforcement of a settlement contract and dismissal of his
complaint, arguing that no valid settlement contract was formed because he was pressured
into signing and there was unequal bargaining power, and that, if a contract was formed,
respondent breached the contract by failing to make a timely settlement payment. Because

a clear and unambiguous settlement contract was formed, the contract was not the result of duress or coercion, and respondent did not breach the contract, we affirm.

**FACTS**

In February 2014, appellant Leslie Davis was walking on a sidewalk in Minneapolis near a Macy's store when he tripped and allegedly suffered bodily injury. Davis filed a complaint against respondent Macy's Retail Holdings Inc., alleging that Macy's negligence caused the injury.

On February 25, 2016, a Macy's senior litigation specialist, Cynthia Rheude, offered Davis $5,000 to settle the matter, and Davis accepted the offer. The next day, Rheude sent an e-mail to Davis stating that she was sending a release for Davis to sign, notarize, and return, after which she would be able to process payment. On February 29, Davis sent an e-mail to Rheude stating that he needed to have the money by March 4, or he would withdraw his acceptance, and Rheude responded that she did not have the signed release and would be unable to pay Davis by March 4. Rheude stated that, if Davis got the settlement contract to her that night, she could process the check on Tuesday (March 1), but that further processing and delivery would take additional time; Rheude resent the release that day. Davis then requested a revised copy of the release without a provision that he execute an affidavit regarding his Medicare status, and a revised release was provided to him for signature.

On March 1, Davis signed the release, had it notarized, and sent it back to Macy's. It effectively releases Macy's from all claims arising from Davis's injury. There are no terms on timing of payment. The release contains the following relevant paragraph: "The

2

undersigned further declare(s) and represent(s) that no promise, inducement or agreement not herein expressed has been made to the undersigned, and that this Release contains the entire agreement between the parties hereto, and that the terms of this release are contractual and not a mere recital."

On March 2, Rheude wrote Davis that she could process the check that day[1] and requested that Davis provide a physical address, because she believed the check could not be sent overnight to a PO Box. Davis did not provide a physical address, stating that he believed the check could be sent to a PO Box if Macy's would "waive the signature." On March 4, Davis contacted Rheude to inquire about the check; Rheude wrote Davis that the check had been mailed earlier that morning. Davis responded that he was rescinding his agreement to settle because of Macy's handling of payment.

In April 2016, Macy's moved to enforce the settlement agreement and dismiss Davis's complaint. Davis challenged the motion, arguing that the settlement agreement was ambiguous and subject to parol evidence due to a lack of specifics as to the method and timing of payment. He argued that Macy's tried to intimidate him to take the $5,000 settlement by implying that the injurious incident did not occur on Macy's property and by threatening to litigate the matter and retract all settlement offers. Davis also argued that he needed the money to help a friend and that Macy's was made aware of the importance of timely payment.

---

[1] The district court found that "Rheude wrote [Davis] that she could process the check the following day if [Davis] provided a physical address." However, Rheude's e-mail states that she could process the check the same day.

3

On June 14, 2016, the district court granted Macy's motion, finding that the terms of the written contract were clear and unambiguous; the written contract was a full and final representation of the parties' agreement; there was no express term regarding method or timing of payment and any evidence to the contrary was precluded by the parol evidence rule; and Davis could not unilaterally rescind the contract. Davis appeals.

## D E C I S I O N

This case was disposed of pursuant to Macy's motion to enforce a settlement agreement. A settlement agreement is a type of contract. *Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 581–82 (Minn. 2010). District courts have "the inherent power to summarily enforce a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous." *Voicestream Minneapolis, Inc. v. RPC Props., Inc.*, 743 N.W.2d 267, 272 (Minn. 2008) (quotation omitted). A district court's order enforcing a settlement agreement without an evidentiary hearing is reviewed similarly to a grant of summary judgment. *See id.* at 273 (holding that "a district court shall treat a motion to enforce a settlement agreement as it would a motion for summary judgment, and explicitly grant or deny each claim"). On appeal from summary judgment, we ask whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990).

Davis first argues that no contract was formed because he was pressured into signing the settlement agreement and there was unequal bargaining power between the parties. He asserts that "Macy's pressured [him] to sign the agreement and told him that he must hurry

4

up and sign the agreement to get the money by March 4, 2016." Davis's argument has no merit.

The settlement of disputes is encouraged, and releases are generally presumed valid. *Sorensen v. Coast–to–Coast Stores, Inc.*, 353 N.W.2d 666, 669 (Minn. App. 1984), *review denied* (Minn. Nov. 7, 1984). "Minnesota courts only recognize duress as a defense to a contract when there is coercion by means of physical force or unlawful threats, which destroys one's free will and compels compliance with the demands of the party exerting the coercion." *St. Louis Park Inv. Co. v. R.L. Johnson Inv. Co.*, 411 N.W.2d 288, 291 (Minn. App. 1987), *review denied* (Minn. Oct. 30, 1987). Further, "[m]erely driving a hard bargain or wresting advantage of another's financial difficulty is not duress." *Id.*

According to Davis's own complaint, he is or was a businessperson, "the manager of a private company." Davis engaged in back-and-forth settlement negotiations with Macy's and successfully dickered over terms. Davis had sufficient time to examine the settlement agreement before choosing to sign, and any sense of urgency was the result of his own circumstances and not Macy's actions. In sum, there is no support for Davis's assertion that he was pressured into signing the agreement.

Davis did not raise the issue of unequal bargaining power before the district court, the district court did not address the issue, and we shall not address the issue. Generally, we will not consider matters not argued to and considered by the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).

Davis argues that, if a contract was formed, Macy's breached the contract by failing to make timely payment. He asserts that payment by March 4 was a term of the parties'

5

contract, even if the term was not contained in the written agreement. He points to the parties' e-mail exchanges to support this assertion, specifically, his e-mail of February 29 demanding payment by March 4.

The district court found that the written contract was, by its own terms, the parties' entire agreement, and parol evidence was therefore inadmissible. "The parol evidence rule makes inadmissible evidence concerning discussions prior to or contemporaneous with the execution of a written instrument when that evidence contradicts or varies the terms of the written agreement." *Material Movers, Inc. v. Hill*, 316 N.W.2d 13, 17 (Minn. 1982). "The application of the parol evidence rule is a question of law subject to de novo review." *Mollico v. Mollico*, 628 N.W.2d 637, 640 (Minn. App. 2001).

Parol evidence of previous understandings or negotiations cannot be introduced to contradict the terms of a final and integrated written expression. *Apple Valley Red-E-Mix, Inc. v. Mills-Winfield Eng'g Sales, Inc.*, 436 N.W.2d 121, 123 (Minn. App. 1989), *review denied* (Minn. Apr. 26, 1989). The question of whether a contract is completely integrated and not subject to variance by parol evidence is an issue of law for the district court. *Id.* Such a determination is made upon consideration of the writing itself, along with "the subject matter and purposes of the transaction, and like attendant circumstances." *Bussard v. Coll. of St. Thomas, Inc.*, 294 Minn. 215, 224, 200 N.W.2d 155, 161 (1972). "[I]f the alleged oral agreement is one that parties similarly situated would embody in the written agreement, then the written document is complete." *Id.* at 225, 200 N.W.2d at 162 (quotation omitted).

Here, the written contract was completely integrated. The written contract contained a merger clause stating that it was "the entire agreement between the parties." *See id*. at 224, 200 N.W.2d at 161 (noting that inspection of the writing is important in determining if a document is the full and final written expression of the parties' agreement). Moreover, if the timing of payment was critical, a reasonable person in Davis's position would have included or requested a payment-timing provision. If the alleged oral agreement is one that would normally be included in a contract between similarly situated parties, then the written contract is complete. *Id.* at 225, 200 N.W.2d at 162. In sum, the written settlement agreement was a final written expression of the parties' agreement, and parol evidence of a previously discussed payment timing term is inadmissible.

The settlement contract was unambiguous. "A contract is ambiguous if, based upon its language alone, it is reasonably susceptible of more than one interpretation." *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003) (quotation omitted). Under the terms of the contract, Macy's offered to pay $5,000 if Davis released his claims. The terms of the contract are not susceptible to more than one interpretation.

Davis argues that the contract is ambiguous because "it failed to mention material issues such as when, where, and how the money would be paid." Contract formation requires a "meeting of the minds on the essential terms of the agreement." *TNT Props., Ltd. v. Tri–Star Developers LLC*, 677 N.W.2d 94, 100–01 (Minn. App. 2004). But "[a] binding contract can exist despite the parties' failure to agree on a term if the term is not essential or can be supplied." *Id.* at 101. Here, Davis argues that receiving the settlement payment by March 4 was an essential term of the contract. However, timing of payment

7

was not an essential term. As stated in *Liljengren Furniture & Lumber Co. v. Mead*, when "a contract is silent as to the time of performance," the law implies that performance shall be "within a reasonable time; and, if the contract [is] in writing, parol evidence of an antecedent or contemporaneous oral agreement is inadmissible" to vary the legally implied time for performance. 42 Minn. 420, 424, 44 N.W. 306, 308 (1890). Further, even if parol evidence was admissible, nothing in the parties' e-mail exchanges suggests that there was an *agreement* on a specific time for payment. In sum, payment by March 4 was not a term of the parties' settlement agreement, Macy's did not breach the contract, and Davis is not entitled to contract rescission. *See Marso v. Mankato Clinic, Ltd.*, 278 Minn. 104, 116–17, 153 N.W.2d 281, 290 (1967) (noting grounds for contract rescission). The written settlement contract is clear and unambiguous, and the district court properly enforced the contract as a matter of law.

**Affirmed.**